UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL SCHLAFFER, Individuallu and on Behalf of All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 1:17-cv-1199 |
| Plaintiff, | § § | JURY TRIAL DEMAND |
| v. | § § | |
| BAZAARVOICE, INC., GENE AUSTIN, THOMAS J. MEREDITH, CRAIG A. BARBAROSH, STEVEN H. BERKOWITZ, KRISTA BERRY, SYDNEY L. CAREY, JEFFREY S. HAWN, ALLISON M. WING, BV PARENT, LLC, BV MERGER SUB, INC., and MARLIN EQUITY PARTNERS, | § § § § § § § § § | |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Schlaffer ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Bazaarvoice, Inc. ("Bazaarvoice" or the "Company") against Bazaarvoice's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Marlin Equity

Partners through its affiliate BV Parent, LLC and its wholly owned subsidiary BV Merger Sub, Inc. (collectively "Marlin").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on December 15, 2017.  The Proxy recommends that Bazaarvoice shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Bazaarvoice is acquired by Marlin.  The Proposed Transaction was first disclosed on November 27, 2017, when Bazaarvoice and Marlin announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Marlin will acquire all of the outstanding shares of common stock of Bazaarvoice for $5.50 per share (the "Merger Consideration").  The deal is valued at approximately $521 million and is expected to close in the first quarter of 2018.

3.      In agreeing to the Proposed Transaction, the Board focused on the short-term pressures that come with being a publicly traded company.  Doing so lead to accepting the Merger Consideration, which falls far short of price targets as high as $7.00 per share. The analyses of the Company's own financial advisor, GCA Advisors, LLC ("GCA Advisors"), found an implied per share equity value as high as $6.95.

4.      Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Bazaarvoice management, as well as the financial analyses conducted by GCA Advisors.

5.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to Bazaarvoice's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Bazaarvoice's shareholders.  In the event that the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from Defendants' violations.

## PARTIES

6.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Bazaarvoice.

7.     Defendant Bazaarvoice is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 10901 South Stonelake Blvd., Austin, Texas, 78759-5749.  Bazaarvoice common stock trades on NASDAQ under the ticker symbol "BV."  Bazaarvoice provides a software platform for retailers and brands to collect and utilize consumer-generated content.

8.     Defendant Gene Austin has been President of the Company since April 2013, CEO since February 2014, and a director since November 2013.

9.     Defendant Thomas J. Meredith has been a director of the Company since 2010.

10.    Defendant Craig A. Barbarosh has been a director of the Company since September 2017.  Barbarosh joined the Board after settling a conflict with Bazaarvoice stockholder Viex Capital Advisors, LLC.

11.     Defendant Steven H. Berkowitz has been a director of the Company since October 2015.

12.     Defendant Krista Berry has been a director of the Company since April 2017.

13.     Defendant Sydney L. Carey has been a director of the Company since 2012.

14.     Defendant Jeffrey S. Hawn has been a director of the Company since April 2015.

15.     Defendant Allison M. Wing has been a director of the Company since April 2017.

16.     Defendants Austin, Barbarosh, Meredith, Berkowitz, Berry, Carey, Hawn, and Wing are collectively referred to herein as the "Board."

17.     Defendant Marlin Equity Partners is a global investment firm based in Los Angeles, California.  Marlin Equity Partners has completed more than 100 acquisitions across several industries and currently has more than $6.7 billion of capital under management.

18.     Defendant BV Parent, LLC is a Delaware limited liability company and an affiliate of Marlin Equity Partners.

19.     Defendant BV Merger Sub, Inc. is a Delaware corporation and a wholly owned subsidiary of BV Parent, LLC.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each Defendant either because Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Bazaarvoice maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**CLASS ACTION ALLEGATIONS**

23.    Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Bazaarvoice common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with Defendants (the "Class").

24.    This action is properly maintainable as a class action for the following reasons:

(a)    The Class is so numerous that joinder of all members is impracticable.  As of November 24, 2017, Bazaarvoice had approximately 86 million shares outstanding.

(b)    Questions of law and fact are common to the Class, including, inter alia, the following:

(i)    Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)     Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of the Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A.      The Board's Dislike of Short-Term Pressures Leads Them to Sell the Company for an Unfair Price**

25.     Bazaarvoice collects and distributes consumer-generated content to retailers and brands to aid those entities in influencing shopping and targeting their advertising.   The Company does this mainly through its Conversations platform, which is a software-as-a-service ("SaaS") platform.  Retailers and brands can use the platform to obtain and display ratings and reviews, answer consumer questions, and generate analytic reports on trends and issues.  The Conversations platform provides the foundation for a number of services, including the Curations service, which allows retailers and brands to find and utilize content from social media sites, and the Spotlights service, which enables consumer-generated content to be included on a retailer's or brand's category and product pages.  The Company also uses the Conversations platform to allow brands to interact with consumers using retailers' websites through the BrandAnswers service, which allows brands to answer questions and offer suggested products directly on a retailer's website, and Review Response, where brands can respond to reviews posted on retailers' websites.

26.     The Company also offers a platform for brands and retailers to use consumer behavior to target their advertisements.  The platform includes features to allow advertising on mobile devices, use of consumer-generated content in advertisements, and shopper profiles that marketing departments and agencies can purchase to reach consumers.

27.     The solutions offered by Bazaarvoice are popular.  In fiscal year 2017, which

ended on April 30, 2017, Bazaarvoice's number of active clients increased 23.6% compared to fiscal year 2013, to 1,494 clients from 1,208 clients. The Company has seen a 37% increase in revenue over the last five years, bringing in $201.2 million in revenue in fiscal year 2017 compared to $146.8 million in revenue in fiscal year 2013.

28.     Despite the Company's growth, on November 26, 2017, the Board entered into the Merger Agreement with Marlin, BV Parent, LLC and BV Merger Sub, Inc.

29.     For decades, academic research has discussed the tendency of managers to focus on short-term gains over more value-creating, but longer-term, prospects.[1]  An increase in stock price, for example, may be one such short-term gain.  Yet attempts to increase stock price may backfire; one study found that when CEOs focus on short-term stock price, they tend to act in ways that actually reduce value.[2]

30.     Statements made by the Company and members of management demonstrate that they had a myopic focus on the short term.  For example, a memo sent to Bazaarvoice employees from Defendant Austin, and filed with the SEC on November 27, 2017, states that the Proposed Transaction would provide "better flexibility" and allow Bazaarvoice "to make longer term growth decisions without the short term focus and scrutiny."  A presentation to Bazaarvoice employees filed with the SEC on November 27, 2017, noted that going private would allow the Company to make "longer term growth decisions with less short term scrutiny and pressure."

---

[1]  He, Zhaozhao and David Hirshleifer, "Managerial Scientific Expertise, Innovation, and Firm Performance," September 2017, at 1, *available at* http://www.fmaconferences.org/Boston/PhD_CEO_Innovation_and_Firm_Performance_FMA.pdf.

[2]  Edmans, Alex, Vivian W. Fang and Allen H. Huang, "The Long-Term Consequences of Short-Term Incentives," European Corporate Governance Institute, Finance Working Paper No. 527/2017, September 2017.

## Why going private is good for Bazaarvoice

- More flexibility to drive and implement our growth strategies

- Fewer impacts of being a public company

- Enable longer term growth decisions with less short term scrutiny and pressure

- Access to capital to expand our products / services (M and A)

- Gain access to Marlin's broad market and business intelligence /expertise

- Open, transparent communication

3   Confidential and Proprietary. © 2017 Bazaarvoice, Inc.                                     bazaarvoice:

31.     The Board agreed to sell the Company because, in its view, escaping the short-term pressures of being a public company would allow it to focus on the long term.  At least one analyst had already recognized Bazaarvoice's great potential for long term growth.  Weiss Stock Research Reports stated in a memo dated September 8, 2017, that Bazaarvoice "has demonstrated a pattern of positive earnings per share growth over the past two years," and believed that it would continue to see such growth.

32.     The Proxy notes that in considering the Proposed Transaction, the Board considered "the uncertainty of whether future trading values would reach the Per Share Merger Consideration as compared to the certainty of realizing a compelling value for shares of Common Stock in the Merger."  Yet in accepting the Merger Consideration, the Board agreed to a price per share much lower than price targets declared or valuations calculated for Bazaarvoice throughout 2017.

33.     A Benzinga article from March 14, 2017, entitled "RGM Capital Raises Stake In Bazaarvoice; What's Next?" noted that BTIG had a $6.00 per share price target for Bazaarvoice. The article also quoted a BTIG analyst as stating that it was a "good time to own the stock,"

because Bazaarvoice's SaaS business was "improving and shopper advertising was receiving investments to propel its initial momentum."

34.     A June 9, 2017 article on Seeking Alpha entitled "Strong Earnings Highlight Enormous Potential For Bazaarvoice" calculated Bazaarvoice's value at $7.09 to $8.30 per share.

35.     A Stock News Magazine article from August 10, 2017, entitled "Is Now The Right Time To Bet On Bazaarvoice, Inc. (BV)?" noted that the Company had a price target at that time as high as $7.00 per share, with another price target of $6.13 per share.  The average price target was $6.25 per share.

36.     An article on Markets.co from September 5, 2017, entitled "B. Riley Reiterates a Buy Rating on Bazaarvoice" noted that B. Riley had set a price target of $5.75 per share for the Company.  The article further noted that the average price target at that time was $6.42 per share.

37.     On September 8, 2017, Credit Suisse set a price target for the Company of $7.00 per share.

38.     Despite price targets as high as $7.00 per share, and a calculated value for the Company as high as $8.30 per share, the Board agreed to sell Bazaarvoice for $5.50 per share.

39.     Even the analyses of the Company's own financial advisor illustrate that the Merger Consideration may not be high enough.  For example, GCA Advisors's *Comparable Company Analysis* implied a per share equity value as high as $6.38.  The *Comparable Transactions Analysis* implied a per share equity value as high as $6.65, while an analysis of consideration paid in acquisitions of 50 technology companies implied a per share equity value as high as $6.95.

**B.      Bazaarvoice's Officers Stand to Receive Benefits Unavailable to the Class**

40.      The Proxy acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

41.      Vested stock options and restricted stock that have been awarded to and are held by Bazaarvoice's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount.   The treatment of these equity awards, in addition to benefits provided to executive officers through employment agreements, will create a windfall for Bazaarvoice's executive officers that is unavailable to the common stockholders.   As demonstrated in the following chart, the executive officers of Bazaarvoice in total stand to receive up to $14.4 million, if they are let go without "cause" or voluntarily leave for "good reason" within one year of the Proposed Transaction closing:

| Name | Total Cash | Total Equity | Tax Reimbursement | Other | Total |
|---|---|---|---|---|---|
| Gene Austin | $944,739 | $5,062,633 | — | — | $6,007,372 |
| Jim Offerdahl | $541,939 | $2,062,715 | — | — | $2,604,654 |
| Gary Allison | $458,059 | $1,395,582 | — | — | $1,853,641 |
| Michael Paulson | $480,517 | $1,494,423 | — | — | $1,974,940 |
| Joe Rohrlich | $472,968 | $1,389,063 | $114,234 | $24,800 | $2,001,065 |

42.      The figures above do not include funds from unvested stock options or restricted stock units for all but Jim Offerdahl, as much of those equity awards will be rolled over into equity in a company affiliated with BV Parent, LLC.   As demonstrated in the following chart, Members of management, including Defendant Austin, Gary Allison, Kinloch Gill, Michael Paulson, Ryan Robinson, Joseph Rohrlich, Sara Spivey and Kelly Trammel, will invest almost $10.8 million while the rest of stockholders are cashed out:

| Name | Unvested Stock Options (#) | Unvested RSUs (#) | Exchanged for Cash Consideration | Exchanged for Topco Units | Exchanged for Topco Profits Interests | Total Amount Exchanged for Topco |
|---|---|---|---|---|---|---|
| Gene Austin | 350,007 | 821,204 | $1,012,527 | $2,025,053 | $2,025,053 | $4,050,106 |
| Gary G. Allison | 56,252 | 237,787 | $279,116 | $558,233 | $558,233 | $1,116,466 |
| Kin Gill | 34,064 | 203,961 | $234,985 | $469,970 | $469,970 | $939,940 |
| Michael Paulson | 105,106 | 243,962 | $298,885 | $597,769 | $597,769 | $1,195,538 |
| Ryan D. Robinson | 34,064 | 184,511 | $213,590 | $427,180 | $427,180 | $854,360 |
| Joseph Rohrlich | 35,218 | 242,712 | $277,813 | $555,625 | $555,625 | $1,111,250 |
| Sara Spivey | 34,064 | 184,836 | $213,948 | $427,895 | $427,895 | $855,790 |
| Kelly Trammell | 42,708 | 138,169 | $169,038 | $338,076 | $338,076 | $676,152 |

43.     In addition, throughout the sales process, Marlin made clear its desire to retain the executive officers of Bazaarvoice, which includes Defendant Austin, after the Proposed Transaction closes.  According to the Proxy, Marlin informed Bazaarvoice that it wanted the executive officers and members of management to rollover their equity to increase the likelihood that they remained at the Company.

## C.     The Preclusive Deal Protection Devices

44.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

45.     For example, section 5.3(a)(i) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal.  Section 5.3(g) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.  Section 5.3 fails to provide a "go-shop" period that would allow the Board to rightfully seek out a better offer for the Company.

46.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that

further guarantee the Company's only suitor will be Marlin.  For example, pursuant to section 5.3(c) of the Merger Agreement, the Company must notify Marlin of any offer, indication of interest, or request for information made by an unsolicited bidder.  Thereafter, should the Board determine that the unsolicited offer is superior, section 5.3(e) requires that the Board grant Marlin four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  Marlin is able to match the unsolicited offer because, pursuant to section 5.3(c) of the Merger Agreement, the Company must provide Marlin with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

47.     In other words, the Merger Agreement gives Marlin access to any rival bidder's information and allows Marlin a free right to top any superior offer.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Bazaarvoice, because the Merger Agreement unfairly assures that any "auction" will favor Marlin and allow Marlin to piggy-back upon the due diligence of the foreclosed second bidder.

48.     In addition, pursuant to section 7.1(e) of the Merger Agreement, Bazaarvoice must pay Marlin a termination fee of $18.27 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

49.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to

provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Marlin's inadequate offer price.

**D.     The Materially Incomplete and Misleading Proxy**

50.     The Individual Defendants owe the stockholders a duty of candor.  They must disclose all material information regarding the Proposed Transaction to Bazaarvoice stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

51.     On December 15, 2017, Defendants filed the Proxy with the SEC.  The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.  However, significant and material facts were not provided to Plaintiff and the Class.  Without such information, Bazaarvoice shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

52.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading.  The Proxy indicates that in connection with the rendering of GCA Advisors's fairness opinion, GCA Advisors reviewed "certain internal financial information and other financial and operating data concerning the Company" and "certain financial projections relating to the Company" prepared by management.  Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Bazaarvoice's management provided to the Board and GCA Advisors.

53.     Notably, Defendants failed to disclose for fiscal years 2018 to 2022, and the second half of fiscal year 2018, for both the July and October management projections: (a) revenue; (b) cost of revenue; (c) operating expenses, including research and development, sales and marketing, general and administrative, acquisition related and other, and amortization of acquired intangible assets; (d) depreciation and amortization; (e) operating income; (f) cash taxes; (g) capitalized internal use software; (h) capital expenditures; (i) increases in net working capital; and (j) stock-based compensation expense.  This omitted information is necessary for Bazaarvoice stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning GCA Advisors's Financial Analyses*

54.     First, with respect to the *Comparable Company Analysis,* the Proxy fails to disclose the objective selection criteria for each company, as well as the amounts of capitalized software development costs used by GCA Advisors in the calculation of each of the Modified Adjusted EBITDA multiples for each of the selected comparable companies.  The Proxy also fails to disclose whether GCA Advisors perform any kind of benchmarking analysis for Bazaarvoice, relative to the selected comparable companies.

55.     Second, with respect to the *Comparable Transactions Analysis*, the Proxy fails to disclose the objective selection criteria for each transaction, as well as the individual multiples for each of the transactions analyzed by GCA Advisors for EV/LTM revenue, EV/NTM revenue, EV/LTM Adjusted EBITDA, EV/NTM Adjusted EBITDA, EV/LTM Modified Adjusted EBITDA and EV/NTM Modified Adjusted EBITDA.  The Proxy also fails to disclose the amounts of capitalized software development costs used by GCA Advisors in the calculation of each of the Modified Adjusted EBITDA multiples for each of the selected transactions.  In

addition, the Proxy fails to disclose whether GCA Advisors performed any kind of benchmarking analysis for Bazaarvoice, relative to the target companies of the selected transactions.

56.     Finally, with respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the range of implied terminal adjusted EBTIDA multiples and implied terminal modified adjusted EBITDA multiples resulting from the analysis.   The Proxy also fails to disclose the terminal year estimate of free cash flow to which the selected perpetuity growth rates were applied.

***Materially Incomplete and Misleading Disclosures Concerning the Flawed Process***

57.     The Proxy also fails to disclose material information concerning the sales process. For example, Marlin informed GCA Advisors, in connection with the indication of interest it made on September 28, 2017, that "management continuity was important to its offer."   On October 9, 2017, Marlin informed GCA Advisors that it would need members of senior management to roll over their unvested equity awards to increase the likelihood that senior management stayed on.   Yet the Proxy is silent as to whether GCA Advisors informed the Board of Marlin's desire for management to remain at the Company and rollover their equity interests. The Proxy also fails to disclose whether members of management were aware of Marlin's requests or discussed the rollover of equity interests with Marlin.

58.     The Proxy fails to disclose whether Defendants Meredith and Hawn considered financial advisors as discussed at the Board meeting on April 10, 2017.   The Proxy also fails to disclose whether the Board considered any other financial advisors besides GCA Advisors.

59.     In addition, the Proxy fails to disclose the "certain members of senior management" that attended Board meetings on April 10, 2017, April 20, 2017, May 1, 2017, May 5, 2017, May 31, 2017, June 1, 2017, July 27, 2017, August 14, 2017, August 31, 2017,

September 25, 2017, October 2, 2017, October 23, 2017, November 17, 2017, and November 26, 2017.

60. The Proxy also fails to disclose the valuation analyses provided to the Board on May 5, 2017, May 31, 2017, and October 23, 2017.

61. In addition, the Proxy fails to disclose whether GCA Advisors had any discussions with Sponsor A between October 5, 2017, and October 23, 2017.

62. Finally, the Proxy fails to disclose whether GCA Advisors provided any services for Marlin for which it received fees.

63. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And, without all material information, Bazaarvoice stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

64. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

65. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

66.     Further, the Proxy indicates that on November 26, 2017, GCA Advisors reviewed with the Board its financial analysis of the Merger Consideration delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated November 26, 2017, to the effect that the Merger Consideration was fair, from a financial point of view, to Bazaarvoice shareholders.  Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning GCA Advisors's financial analyses which has been omitted from the Proxy and, thus, knew or should have known that such information has been omitted.

67.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein and lack an adequate remedy at law.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

### CLAIMS FOR RELIEF

### <u>COUNT I</u>

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

68.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69.     Defendants have filed the Proxy with the SEC with the intention of soliciting Bazaarvoice shareholder support for the Proposed Transaction.   Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

70.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.

Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Bazaarvoice, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

71.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

72.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Bazaarvoice shares and the financial analyses performed by GCA Advisors in support of its fairness opinion; and (iii) the sales process.

73.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that GCA Advisors reviewed and discussed its financial analyses with the Board during various meetings including on November 26, 2017, and further states that the Board relied upon GCA Advisors's financial analyses and fairness opinion in connection with approving the Proposed Transaction.  The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

74.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act**

75.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

76.     The Individual Defendants acted as controlling persons of Bazaarvoice within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Bazaarvoice and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

79.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

80.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants, jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to Bazaarvoice shareholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  December 22, 2017.

Respectfully submitted,

_____/s/ Thomas E. Bilek_____
Thomas E. Bilek
TX Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**

700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Shane T. Rowley
Danielle Rowland Lindahl
**ROWLEY LAW PLLC**
50 Main Street, Suite 1000
White Plains, NY  10606
Tel: (914) 400-1920
Fax: (914) 301-3514